

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JAM:NCG
F. #2022R00224

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 4, 2023

By ECF

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Kurbonali Sultanov
     <u>Criminal Docket No. 22-149 (NRM)</u>

Dear Judge Morrison:

  The government respectfully submits this letter to supplement its opposition to the defendant's motion to suppress, ECF No. 22, (hereinafter, "Gov. Opp."), and in response to the Court's request for additional briefing on certain limited subjects at the April 14, 2023, oral argument on the defendant's motion to suppress. Specifically, the Court requested briefing on the following issues: (1) whether any level of suspicion is required for the manual search of a cell phone at the border; and (2) if one or more pieces of evidence in the search warrant affidavit submitted to Magistrate Judge Cho were to be suppressed, whether the search warrant is valid. <u>See</u> April 18, 2023 Tr. at 65-66.[1]

  As to question (1), pursuant to the border search doctrine, United States Customs and Border Protection ("CBP") officers may conduct a manual review of an electronic device at the border without any individualized suspicion. But, as the defendant concedes, the CBP had reasonable suspicion in this case. Oral Arg. Tr. at 45-46. Therefore, the Court need not decide whether any individualized suspicion is required for a manual border search of an electronic device, which would constitute an advisory opinion, and

---

 [1] The government limits this post-hearing brief to the issues on which the Court requested further briefing, and does not address other issues presented in the defendant's motion to suppress, as to which the government relies on its opposition to the defendant's motion ("Gov. Opp.") and the testimony at the hearing.

instead should find that, based on the facts in this case, reasonable suspicion was present and was sufficient for the manual review of the defendant's cell phone.

As to question (2), even if the Court finds that evidence included in the search warrant affidavit was illegally obtained (which it was not), the Court should not exclude the fruits of that warrant because the search warrant affidavit was still supported by probable cause, the fruit of the poisonous tree doctrine does not apply, and the good faith exception applies.

Based on the evidence presented at the March 21, 2023 evidentiary hearing, the government's memorandum of law in opposition to the defendant's motion to suppress, and the April 18, 2023 oral argument, the defendant's claims are unavailing, and the motion to suppress should be denied in its entirety.

I. The Defendant's Phone Was Lawfully Searched Pursuant to the Border Search Doctrine

A. The Cursory, Manual Review of the Defendant's Cell Phone for Contraband Was a Routine Search, Requiring No Individualized Suspicion

As the government outlined in its pre-hearing brief (Gov. Opp. at 18), the Second Circuit has "recognize[d] the Federal Government's broad plenary powers to conduct so-called 'routine' searches at the border even without 'reasonable suspicion that the prospective entrant has committed a crime.'" United States v. Levy, 803 F.3d 120, 122 (2d Cir. 2015) (quoting Tabbaa v. Chertoff, 509 F.3d 89, 97–98 (2d Cir. 2007). "[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior" due to the government's broad and comprehensive "power to protect the Nation by stopping and examining persons entering this country." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985). The ability to conduct warrantless searches of people and property entering or leaving the United States serves the need for "national self-protection." Carroll v. United States, 267 U.S. 132, 154 (1925). Therefore, "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." United States v. Ramsey, 431 U.S. 606, 616 (1972); see also United States v. Nieves, 609 F.2d 642, 645 (2d Cir. 1979). Routine searches and seizures at the border therefore are exempted from standard Fourth Amendment requirements so that the government can "prevent the introduction of contraband" into the country and bar entry by those who would bring harm across the border. Montoya de Hernandez, 473 U.S. at 537, 544. And it is "well established that the Customs area of an international airport is the functional equivalent of a border for purposes of the border search doctrine." Levy, 803 F.3d at 122 (citing United States v. Irving, 452 F.3d 110, 123 (2d Cir. 2006)).

The Supreme Court's decision in Riley v. California, 134 S. Ct. 2473, 2485 (2014), which was raised during the April 18, 2023 oral argument, does not apply to border

2

searches. In Riley, the Supreme Court held that probable cause and a warrant are required for the search of a cell phone incident to arrest, but expressly limited its holding to searches of cell phones incident to arrests, stating that while "the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." Id. at 2494. Post-Riley cases have confirmed that it does not apply to border searches. For instance, in Abidor v. Johnson, 10-CV-4059, 2016 WL 3102017, at *6, n.* (E.D.N.Y. June 2, 2016), Judge Korman noted that "[t]he justification for a border search . . . is far different from the justification for the search of a laptop or cell phone incident to an arrest." Id. The justifications for a search incident to an arrest are the disarming of the arrestee and preventing the arrestee from destroying evidence. Id. (citing Riley, 134 S. Ct. at 2483-85). The purposes of a border search, by contrast, are "to determine who is entering the United States, for what purpose, and what they are bringing into the country." Id. Judge Korman concluded that applying Riley to the border search "context would significantly, if not totally, undermine these purposes." Id.

Although neither the Supreme Court nor the Second Circuit has squarely addressed the issue of border searches of electronic devices and whether any individualized suspicion is required to conduct such a search, see United States v. Kamaldoss, No. 19-CR-543 (ARR), 2022 WL 1200776, at *10 (E.D.N.Y. Apr. 22, 2022), "no court has ever required a warrant for any border search or seizure," United States v. Wanjiku, 919 F.3d 472, 485 (7th Cir. 2019), either pre- or post-Riley. "Riley does not command a warrant requirement for border searches of electronic devices nor does the logic behind Riley compel . . . one." Alasaad v. Mayorkas, 988 F.3d 8, 17, 18-19 (1st Cir. 2021); see also United States v. Cano, 934 F.3d 1002, 1015-1016 (9th Cir. 2019) (rejecting application of Riley and warrant requirement to manual searches of cell phones at the border); United States v. Molina-Isidoro, 884 F.3d 287, 292 (5th Cir. 2018) ("[N]ot a single court addressing border searches of computers since Riley has read it to require a warrant.") (collecting cases); United States v. Vergara, 884 F.3d 1309, 1312 (11th Cir. 2018) ("Border searches never require probable cause or a warrant").

Similarly, numerous courts have explicitly held, post-Riley, that law enforcement officers may conduct manual searches of cell phones absent any reasonable suspicion. See, e.g., Alasaad, 988 F.3d at 18-19 ("basic border searches," including those that "require an officer to manually traverse the contents of the traveler's electronic device . . . need not be supported by reasonable suspicion"); Cano, 934 F.3d at 1016 ("we hold that manual searches of cell phones at the border are reasonable without individualized suspicion"); United States v. Touset, 890 F.3d 1227, 1229 (11th Cir. 2018) ("our precedents about border searches of property make clear that no suspicion is necessary to search electronic devices at the border"); United States v. Almadaoji, 567 F. Supp. 3d 834, 839-40 (S.D. Ohio 2021) ("A manual search, whereby an officer simply scrolls through the device to view its contents, is classified as [a] 'routine' border search for which no warrant, reasonable suspicion or probable cause is required."); United States v. Kolsuz, 185 F. Supp. 3d 843, 860 (E.D. Va. 2016), aff'd, 890 F.3d 133 (4th Cir. 2018) (manual search at airport of iPhone "was a routine border search that did not require any level of individualized suspicion"); see also Abidor v. Napolitano, 990 F. Supp. 2d 260, 277 (E.D.N.Y. 2013) (holding, pre-Riley,

3

that "reasonable suspicion is not required to conduct a cursory manual search of an electronic device at the border"); Abidor v. Johnson, No. 10-CV-4059 (ERK), 2016 WL 3102017, at *6 (E.D.N.Y. June 2, 2016) ("Applying the holding in Riley in [the border search] context would significantly, if not totally, undermine [its] purposes.").

To be sure, the Supreme Court has held that even at the border, individualized suspicion may be necessary to justify certain "highly intrusive searches," see Flores-Montano, 541 U.S. at 152, but a cursory, manual review of a cell phone for contraband does not rise to that level. Rather, the search of the defendant's phone was well-within the scope of a lawful border examination. The examination was done at JFK Airport, a location that has been squarely found to be the functional equivalent of a national border. The examination was conducted by CBP Officer Pichardo, who is specifically charged with conducting border enforcement activities. The examination was done for the purpose of looking for contraband—child pornography—that could not lawfully be brought into the United States from outside the country. And the examination was limited to a routine and manual review of the phone, relying upon no forensic applications nor any prolonged detention and removal of the device to some other location. As Officer Pichardo testified, he placed the defendant's cell phone in airplane mode prior to reviewing the phone to ensure the review was limited to items on the phone itself, Supp. Hrng Tr. at 20, and his search was limited to looking for child pornography. Id. at 31.

The facts of this case are similar to those in which courts have repeatedly held such searches to be valid border searches that require neither a warrant nor reasonable suspicion. See, e.g., Alasaad, 988 F.3d at 18-19; Kolsuz, 185 F. Supp. 3d at 860; Cano, 934 F.3d at 1007; Touset, 890 F.3d at 1229; Almadaoji, 567 F. Supp. 3d at 839-40; Napolitano, 990 F. Supp. 2d at 277. As Judge Cogan noted in a post-Riley opinion, "as to the search of defendant's cellphone, the Second Circuit continues to give deference to searches conducted at the border where they are routine, including where there is an absence of reasonable suspicion that the prospective entrant has committed a crime, even after Riley v. California, 134 S. Ct. 2473 (2014)." United States v. Oladokun, 15-CR-559 (BMC), 2016 WL 4033166, at *7 (E.D.N.Y. July 27, 2016). The reasoning behind permitting border officials to conduct inspections of property at the border for contraband was captured by Judge Kaplan of the Southern District, who explained in a similar case:

> The opening of luggage, itself a closed container, is the paradigmatic routine border search. Hence, the agents were entitled to inspect the contents of the diskettes even absent reasonable suspicion. Indeed, any other decision effectively would allow individuals to render graphic contraband, such as child pornography, largely immune to border search simply by scanning images onto a computer disk before arriving at the border.

United States v. Irving, No. S3 03-CR-0633 (LAK), 2003 WL 22127913, at *5 (S.D.N.Y. Sept. 15, 2003) (internal quotations, footnotes and citations omitted). That logic applies with equal force here.

As set forth below, as the defendant conceded, the CBP had reasonable suspicion in this case to conduct a manual search of the defendant's cell phone. Therefore, the Court need not determine whether any individualized suspicion is required to conduct a manual search of a cell phone at the border, as that question is not squarely presented here and any opinion on this subject would be an advisory one.

B. The CBP Had Reasonable Suspicion to Search the Defendant's Cell Phone

It is undisputed that the CBP Officer who conducted the manual search of the defendant's cell phone at JFK Airport had such reasonable suspicion to conduct such an examination, as the defendant conceded at the oral argument. Oral Arg. Tr. at 45-46.

The Supreme Court has defined reasonable suspicion as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417–18 (1981). The standard is met when law enforcement can point to "specific and articulable facts" that lead to the inference that criminal activity "may be afoot." Terry v. Ohio, 392 U.S. 1, 21, 30 (1968). "Reasonable suspicion is a relatively low standard and border officials are afforded deference due to their training and experience." Abidor, 990 F. Supp. 2d at 282 (citing Montoya de Hernandez, 473 U.S. at 542). An analysis of whether reasonable suspicion exists also considers an officer's background and training, and the context of the situation as a whole. United States v. Ruiz, 785 F.3d 1134, 1141 (7th Cir. 2015).

Here, as CBP Officer Pichardo testified, he had reasonable suspicion because the defendant had been flagged as a potential purchaser of child pornography, which is digital contraband, and there was an entry in the TECS system to that effect. This alert is sufficient for reasonable suspicion, as an alert in a law enforcement database suggesting that a traveler is involved in criminal activity provides reasonable suspicion. See, e.g., United States v. Cotterman, 709 F.3d 952, 967 (9th Cir. 2013) (reasonable suspicion existed where border agents relied on TECS hit related to the defendant's potential involvement in child pornography in making decision to search defendant's belongings), United States v. Ramirez, No. EP-18-CR-3530-PRM, 2019 WL 3502913, at *15 (W.D. Tex. Aug. 1, 2019) (officers had reasonable suspicion to search the defendant's cell phone where a TECS record informed them that the defendant was linked to the purchase of child pornography); United States v. Bunty, 617 F. Supp. 2d 359, 365 & n.7 (E.D. Pa. 2008) (reasonable suspicion existed where agents referred defendant for a secondary inspection based on their knowledge from a law enforcement database of his arrest for the sexual abuse of a child and the resulting conviction for corrupting the morals of a minor).

Additionally, Officer Pichardo testified that the date of the TECS hit, January 12, 2022, was concerning to him because this was the first time that the defendant was re-entering the country since the date of the TECS hit, and no law enforcement officer had addressed the TECS hit since it was entered into the database. Supp. Hrng Tr. at 25-26. That also provides reasonable suspicion for Officer Pichardo's manual review of the defendant's cellular telephone.

5

Accordingly, Officer Pichardo had reasonable suspicion to search the cell phone, and suppression is not warranted.

II. Suppression of Evidence Obtained Pursuant to the Search Warrant Is Unwarranted

On March 17, 2022, following Officer Pichardo's discovery of child pornography during the manual review of the contents of one of the defendant's cell phones, the Honorable James R. Cho signed a search warrant authorizing law enforcement to forensically examine the contents of two of the defendant's cell phones—the cell phone which CBP initially manually reviewed—and another cell phone that was on the defendant's person at the time of his arrest, but which was powered down at that time (22-MJ-319). Even if the Court finds that evidence included in the search warrant affidavit—specifically, the defendant's statements and passcode—was illegally obtained (which it was not), exclusion is not warranted because (1) even excluding the defendant's statements to law enforcement, the search warrant affidavit was supported by probable cause; (2) even if the passcode to the defendant's phone was illegally obtained (which it was not), the fruit of the poisonous tree doctrine does not apply; and (3) the government relied in good faith on the issued search warrant.

A. The Search Warrant Was Not "Tainted" By the Defendant's Statements

Assuming arguendo that there was a violation of Miranda requirements when Special Agent Croft interviewed the defendant (and for the reasons stated in the Gov. Opp. at 26-31, there were not), the subsequently obtained cell phone search warrant remains valid. "'[T]he mere inclusion of tainted evidence in an affidavit does not, by itself, taint [a] warrant or the evidence seized pursuant to the warrant,' [but instead] the court 'should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'" United States v. Awadallah, 349 F.3d 42, 68 (2d Cir. 2003) (quoting United States v. Trzaska, 111 F.3d 1019, 1026 (2d Cir. 1997)).

Here, the search warrant affidavit contained ample probable cause without information from the defendant's interview. Even putting aside the defendant's admissions to law enforcement regarding his purchase of child pornography, the search warrant affidavit included evidence from the cursory, manual review of the defendant's cell phone, which, as noted above, CBP Officer Pichardo had reasonable suspicion to conduct. The warrant affidavit included descriptions of the child pornography found on the device through a manual search, Search Warrant Aff. ¶¶ 6-9, which provided sufficient probable cause to obtain a search warrant for the cell phones. In fact, that the cell phone itself contained child pornography is arguably more probative than the statements from the defendant. Therefore, the search warrant remains valid even absent statements from the defendant.

B. The Fruit of the Poisonous Tree Doctrine Does Not Apply

Relatedly, even if the Court finds that the passcode to the defendant's cell phone was illegally obtained (which it was not, for the reasons discussed in the Gov. Opp. at

6

6-18), suppression of derivative evidence would be improper. In United States v. Patane, 542 U.S. 630 (2004), the Supreme Court held that a failure to give a suspect Miranda warnings does not require suppression of the physical fruits of the suspect's unwarned but voluntary statements. See also id. at 639, 642 (holding that "[t]here is . . . no reason to apply the 'fruit of the poisonous tree' doctrine" to evidence obtained derivatively from statements elicited without Miranda warnings because the rationale of deterring unlawful searches does not apply to failures to give Miranda warnings). "The Miranda presumption of coercion," "has not barred the use of unwarned, voluntary statements . . . to locate non-testimonial evidence[.]" United States v. Morales, 788 F.2d 883, 886 (2d Cir. 1986); see also United States v. Hernandez, No. 18-CR-1888, 2018 WL 3862017, at *4 (S.D. Cal. Aug. 13, 2018) (denying motion to suppress evidence from cell phone where passcode was obtained after defendant invoked her right to counsel after her arrest at the border for narcotics offenses because there was no evidence of coercion or a denial of due process in elicitation of the statements); United States v. Iverson, 166 F. Supp. 3d 350, 364 (W.D.N.Y. 2016) ("And even if there were a Miranda violation, that would not require the suppression of physical evidence."). Therefore, even if the Court were to find that the defendant was in custody when he disclosed his password to Officer Pichardo, that Miranda warnings were required, and the password should be suppressed, the derivative evidence obtained from the manual review of the defendant's cell phone at the border should not be suppressed because the fruit of the poisonous tree doctrine does not apply to that physical evidence.

## C. The Search Warrants Were Proper and Relied Upon in Good Faith

### 1. Applicable Law Regarding Good Faith Exception

In United States v. Leon, 468 U.S. 897, 922 (1984), the Supreme Court held that the exclusionary rule "does not apply to evidence seized 'in objectively reasonable reliance on' a warrant issued by a detached and neutral magistrate judge, even where the warrant is subsequently deemed invalid." United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008) (quoting Leon, 468 U.S. at 922). The Leon Court explained that, "assuming that the [exclusionary] rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement." Leon, 468 U.S. at 919.

Under the good faith exception, evidence collected pursuant to an invalid search warrant will be suppressed only if one of the following circumstances exists: (1) the issuing judge was "knowingly misled," (2) "the issuing judge wholly abandoned his or her judicial role," (3) the application was "so lacking in indicia of probable cause as to render reliance upon it unreasonable," or (4) the warrant is so "facially deficient" that reliance upon it is unreasonable. Falso, 544 F.3d at 125. If the officer's reliance on the warrant was objectively reasonable, suppression is not warranted. Leon, 468 U.S. at 922. To trigger the exclusionary rule, law enforcement conduct "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." United States v. Herring, 555 U.S. 135, 144 (2009).

7

## 2. The Good Faith Exception Applies

Here, assuming arguendo that the Court suppresses any evidence included in the search warrant affidavit, the Court should not suppress the fruits of the warrant because the good faith exception applies.

Even if the Court were to find that the defendant's statements or the passcode for the cellular telephone were obtained in violation of Miranda, none of the Leon circumstances are present. As to the defendant's statements regarding his purchase of child pornography, Special Agent Croft did not "knowingly" mislead Magistrate Judge Cho. To the contrary, his testimony established his belief that the defendant had knowingly and voluntarily waived his Miranda rights and that he therefore acted in good faith. See Supp. Hrng Tr. at 86 ("Q: Did you ask the defendant what he didn't understand? A: I attempted to, but then he proceeded to tell me what was in his phone."); id. at 111 ("Q: According to your testimony, the fact that he did not sign that Miranda form, does it mean that he did not acknowledge the understanding of the warnings contained in that form? A: No. It means he didn't sign the form.").[2] And as to the passcode and subsequent manual search of the cell phone, courts have applied the good faith exception in the context of warrantless searches of cell phones. See, e.g., United States v. Aigbekaen, 943 F.3d 713, 725 (4th Cir. 2019) (applying the good faith exception in the context of warrantless forensic searches of electronic devices given the permissive "uniform body of precedent" that existed at the time of the search); Molina-Isidoro, 884 F.3d at 291-92 (reasonable for law enforcement to think that warrantless, manual search of defendant's cell phone at the border was lawful); United States v. Bongiovanni, No. 19-CR-227, 2022 WL 17481884, at *14 (W.D.N.Y. Aug. 5, 2022) (denying motion to suppress evidence from border search of a cell phone pursuant to good faith exception where law enforcement did not act contrary to binding appellate precedent when they conducted search).

Indeed, a search warrant affidavit by a law enforcement agent carries a "presumption of validity." See Falso, 544 F.3d at 125. And, as noted above, the affidavit was not lacking in probable cause or facially deficient such that reliance upon it was unreasonable; to the contrary, it included substantial information regarding child pornography found on the defendant's phone, which, as noted above, was lawfully searched. See id. at 128 ("Once the district court ruled on the legal sufficiency of the facts alleged in the affidavit, the officers were justified in executing the warrant." (citation omitted)). Where law enforcement acted in good faith, as CBP Officer Pichardo and Special Agent Croft did

---

[2] Even if the Court finds that Special Agent Croft should have explained the defendant's Miranda rights to him a second time, see Oral Arg. Tr. at 28, Special Agent Croft's testimony makes clear that he did not act deliberately or in bad faith when he continued the interview. See United States v. Plugh, 648 F.3d 118, 128 (2d Cir. 2011) (noting the defendant acted inconsistently with exercising Miranda rights "when he chose to begin speaking with custodial agents at the FBI field office, and, as such made a deliberate choice to relinquish the protections those rights afford." (internal quotation omitted)).

8

here, no meaningful deterrent effect would be achieved through suppression of evidence. Finally, the issuing judge did not abandon his judicial role in any way.

Accordingly, even if the Court determines that the affidavit lacked probable cause, the good faith exception applies, and suppression is not warranted.

III. Conclusion

Based on the above, the evidence presented at the March 21, 2023 evidentiary hearing, the government's memorandum of law in opposition to the defendant's motion to suppress, and the April 18, 2023 oral argument, the defendant's claims are unavailing, and the motion to suppress should be denied in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Nina C. Gupta
Assistant U.S. Attorney
(718) 254-6257