UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

Plaintiff

v.

KURBONALI SULTANOV

Defendant

Criminal Docket No. 22-149 (NRM)

---

# AFFIRMATION IN OPPOSITION TO GOVERNMENT'S LETTER TO SUPPLEMENT ITS OPPOSITION

Igor Niman, Esq., affirms to be true and states under penalty of perjury as follows:

1. I am the attorney for the defendant, Kurbonali Sultanov, and I make this affidavit in opposition to government's letter to supplement and in further support of defendant's motion to suppress.

2. The defendant Kurbonali Sultanov continues to maintain that the Court should suppress evidence and statements obtained by CBP when Mr. Sultanov was stopped at the JFK Airport in Queens, New York, and it should suppress evidence that was gathered after the execution of the search warrant on March 17, 2022 relating to Mr. Sultanov's cell phones. These seizures and the solicitation of statements all violated Mr. Sultanov's rights under the Fourth and Fifth Amendments to the U.S. Constitution.

3. In support of its position, the Government had cited a newly published decision United States v. Smith, 2023 WL 3358357 (S.D.N.Y. 2023), where Judge Rakoff ruled that the Government can't search the cell phone at the border without a warrant, subject to Riley v. California, 573 373, 134 S.Ct .2473 (2014).

4. However, Judge Rakoff relied on "good faith exception" doctrine to deny defendant's motion to suppress.

   i. **The instant case is distinguishable from <u>United States v. Smith</u>**

5. The instant case is distinguishable from <u>United States v. Smith</u> in that the defendant in <u>Smith</u> had filed motion to suppress based only on the Fourth Amendment violation and did not argue the issue of custodial interrogation under <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602 (1966).

6. In fact, the Court noted in <u>United States v. Smith</u>, 2023 WL 3358357, in footnote 3, "Smith has not argued that the Government, in holding him at the airport until he turned over his phone password, subjected him to a custodial interrogation under <u>Miranda v. Arizona</u>."

7. Subsequently, the Court cited <u>United States v. Patane</u>, 542 U.S. 630, 637-42 (2004), in support of its conclusion.

8. However, <u>Patane</u> is inapplicable to this case, as the Defendant Sultanov asserts that his statements, that revealed cell phone password to the Government, were coerced and not voluntary.

9. Moreover, the Court concluded that even if Smith's "divulging his password was not just unwarranted but also coerced, that would still likely not require suppression." <u>United States v. Smith</u>, footnote 3.

10. In support of that conclusion, the Court cited a law review article of Orin Kerr, <u>Compelled Decryption and Privilege against Self Incrimination</u>, 97 Tex. L. Rev. 767 (2019).

11. To begin with, the law review article cited by the Court in <u>United States v. Smith</u> is addressing the issue of the "Fifth Amendment framework for *compelling acts* of decryption by entering a password without disclosing it to the government." Orin Kerr, <u>Compelled Decryption and Privilege against Self Incrimination</u>, 97 Tex. L. Rev. at 768, footnote 5 (emphasis added).

12. Even the authors of <u>Compelled Decryption and Privilege against Self Incrimination</u>, admit that "Compelled use of biometrics and *compelled disclosure of passwords* raise *different* Fifth Amendment issues." <u>Id</u>. (emphasis added).

13. In <u>United States v. Hearst</u>, 2022 WL 16832834 at 21 (N.D. Georgia 2022), the Court had cited numerous cases that "have recognized that production of cellphone passwords constitutes incriminatory testimony protected by the Fifth Amendment."

14. Specifically, the Court in <u>United States v. Hearst</u> had cited

> <u>United States v. Doe (In re Grand Jury Subpoena Duces Tecum),</u> 670 F.3d 1335, 1346 (11th Cir. 2012) (holding that Doe's "decryption and production of the contents of the hard drives would sufficiently implicate the Fifth Amendment privilege" because the "decryption and production would be tantamount to testimony by Doe of his knowledge of the existence and location of potentially incriminating files; of his possession, control, and access to the encrypted portions of the drives; and of his capability to decrypt the files"); <u>United States v. Jimenez,</u> 419 F. Supp. 3d 232, 233 (D. Mass. 2020) ("Whether the defendant is forced to reveal his passcode or unlock the phone in the presence of law enforcement ... would force defendant to 'disclose the contents of his own mind' and accordingly

are testimonial acts violating the Fifth Amendment.") (quoting Curcio v. United States, 354 U.S. 118, 128, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957)); United States v. Mendez-Bernal, No. 319CR00010TCBRGV, 2020 WL 6495109, at 17 (N.D. Ga. July 22, 2020) (holding that " 'police questioning asking for [defendant's] cell phone passcode, and [his] act of providing the passcode,' is due to be suppressed") (quoting Carter v. Davids, Case No. 1:19-cv-555, 2019 WL 6001698, at 13 (W.D. Mich. Nov. 14, 2019)), *report and recommendation adopted*, No. 3:19-CR-10-TCB, 2020 WL 5494728 (N.D. Ga. Sept. 11, 2020), United States v. Maffei, Case No. 18-CR-00174-YGR-1, 2019 WL 1864712, at 6 (N.D. Cal. Apr. 25, 2019) (finding that forcing the defendant to provide her cellphone passcode was testimonial, but ultimately concluding that it did not violate the Fifth Amendment because it was not compelled, though the district court still suppressed the defendant's statement of her passcode for violating her Fourth and Sixth Amendment rights); United States v. Sanchez, 334 F. Supp. 3d 1284, 1295-96 (N.D. Ga. 2018) (holding that "the facts in this case show that Defendant's production of his cellphone passcode was compulsory within the meaning of the Fifth Amendment"); In the Matter of the Search Warrant Application for [redacted text], 279 F. Supp. 3d 800, 806 (N.D. Ill. 2017) (explaining that the "principle [articulated by the Supreme Court in Doe v. United States, 487 U.S. 201, 210 n.9, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988)] applies here: a person generally cannot be compelled to disclose the passcode [to a phone]");

Id.

15. The defendant realleges Justice Stevens' majority opinion in United States v. Hubbell, 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000), stating "that Defendant's assembly of documents, in response to the government grand jury subpoena, violated his privilege against self-incrimination … The assembly of those documents was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox." United States v. Kirschner, 823 F. Supp. 2d at 669, quoting United States v. Hubbell, 530 U.S at 43.

### ii. Good faith exception does not apply in this case

16. Furthermore, the Government's possible assertion that good faith exception shall apply even to a suppressed, coerced statement made by defendant, that revealed his cell phone password, shall be rejected.

17. The exception applies only in cases where evidence is seized pursuant to a warrant, modifies rather than eliminates the exclusionary rule, and requires that the police officer's reliance on the magistrate's probable cause determination must be objectively reasonable.

18. In United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court had stated that the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause.

19. In the United States v. Leon, the Court had stated that good faith exception applies in all but four limited sets of circumstances. Id. at 923.

20. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was

false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" <u>Lo–Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" <u>Brown v. Illinois</u>, 422 U.S., at 610–611, 95 S.Ct., at 2265–2266; and (4) where, a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." <u>Id</u>.

21. With that in mind, the Government in its submission (Dkt. 30), states that "Additionally, as in <u>Smith</u>, the government did not mislead the judge who signed the warrant regarding the facts and circumstances."

22. The Defendant submits that this statement is incorrect.

23. In the Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize ("Application for Search Warrant"), Special Agent Joshua Croft in paragraph 8, stated "During the search, SULTANOV voluntarily gave CBP officers the password for Device 1." (See, Exhibit A).

24. The defendant continues to maintain that he did not provide the password to devices voluntarily.

25. However, Special Agent Joshua Croft who had submitted the application for the search warrant, clearly knew that the password was provided to CBP officer Malves Pichardo, before Miranda warnings were administered to Mr. Sultanov for the first time.

26. The agent clearly knew that the defendant was not free to leave the U.S. Customs secondary inspection area.

27. Moreover, defendant did not want to provide the password but was told that he had to.

28. The defendant submits, that the logic for the misstatement by Special Agent Joshua Croft is based on a well known knowledge that the Miranda warnings are required at the *border* settings "when the questioning of the official becomes an interrogation that is custodial in nature and is one in which information is sought for the purpose of using it against a person in a criminal proceeding." United States v. Silva, 715 F.2d 43, 47-48 (2d Cir. 1983).

29. Good faith exception applies only to searches where binding, appellate precedent specifically authorizes the police's search. See, Davis v. United States, 564 U.S. 229, 249, 131 S.Ct. 2419 (2011).

30. It is clear, that United States v. Silva, that was decided in 1983, is a binding appellate precedent that clearly outlaws custodial interrogation *at the border* for the purpose of using it against a person in a criminal proceeding.

31. Special Agent Joshua Croft knew all too well that the password to a cell phone is testimonial in nature and that the purpose of using the divulged password is to obtain information to be used against Mr. Sultanov in a criminal proceeding.

32. The notion of purposeful misleading of Magistrate Judge is further supported by the fact that in the same paragraph 8 of the Application for Search Warrant, the Agent informed the judge that "As outlined in the Complaint, on March 5, 2022, SULTANOV landed at John F. Kennedy International Airport ("JFK Airport"), traveling from Uzbekistan via Istanbul. He was stopped by United States Customs and Border Protection ("CBP") at JFK Airport. A border search was conducted. (footnote 1)."

33. Footnote 1 of the same application states "The federal government has "broad plenary powers to conduct so-called 'routine' searches at the border even without 'reasonable suspicion that the prospective entrant has committed a crime.'" United States v. Levy, 803 F.3d 120, 122 (2d Cir. 2015) (quoting Tabbaa v. Chertoff, 509 F.3d 89, 97-98 (2d Cir. 2007)).

34. These statements of Special Agent Joshua Croft in the sworn application, completely deny him of any innocent explanation as to the misstatements of the facts as it relates to this case.

35. Special Agent Joshua Croft clearly knew that search that occurred at the border was not "routine" but due to the information that was previously related to the authorities that Mr. Sultanov allegedly acquired materials that could contain child pornography.

35. Thus, the Customs and Border Patrol officer Malves Pichardo, knew what he is looking for, even before Mr. Sultanov handed the phone to him.

36. The reason for the omission of this information from the Sworn Statement is simply to avoid questions that could be posed by Magistrate Judge before signing the warrant.

37. The fact that the password was divulged by the defendant due to coercion, before the defendant was provided with Miranda warnings, despite CBP officer's specific knowledge that the evidence to may be obtained from the defendant's cell phone, will be used against Mr. Sultanov, was clearly known to the Special Agent Croft at the time of the submission of the sworn statement.

38. The knowledge that such border interrogations shall be conducted after issuing Miranda warnings is a binding appellate authority since 1983.

39. The Special Agent Croft knowingly and purposefully omitted the issue of CBP officer's Pichardo knowledge, obtained from TECS coupled with the lack of issuance of Miranda warnings, in order to mislead Magistrate Judge into thinking that the password to the cell phone was provided voluntarily during routine border search, specifically to avoid any questioning based on United States v. Silva ruling.

40. Being provided with the Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize, Magistrate Judge James R. Cho, simply incorporated the identical description of the items to be searched, as it was previously provided by the Special Agent Croft, into the Search and Seizure Warrant.

41. In this case, "a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the resulting search or seizure." United States v. Martin, 426 F.3d 68, 73 (2d Cir.2005) (quoting United States v. Awadallah, 349 F.3d 42, 64 (2nd Cir. 2003).

42. "One such circumstance [when the validity of the resulting search and seizure may be challenged] is where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information." United States v. Canfield, 212 F.3d 713, 717 (2d Cir.2000). (language added).

43. The Second Circuit has held that "recklessness may be inferred when omitted information was 'clearly critical' to assessing the legality of the search." United States v. Reilly, *76 F.3d 1271, 1280 (2d Cir.1996).

44. In this instance, the recklessness is clear as Special Agent who had submitted Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize had specifically omitted information as to voluntariness of the password divulgence and prior

knowledge of officer Pichardo, to conceal the simple notion that the Special Agent's Affidavit contained allegations based on illegally obtained evidence.

45. A notion that Special Agent Croft, did not hand first hand knowledge of coerced statement made to CBP Officer Malves Pichardo is of no avail either.

46. "[T]he state of mind of the affiant is not the only relevant one, because 'the validity of the search is not saved if the governmental officer swearing to the affidavit has incorporated an intentional or reckless falsehood told to [him] by another governmental agent." United States v. Spears, 673 F.3d 598, 604 (7TH Cir. 2012) (citing United States v. McAllister, 18 F.3d 1412, 1417 (7th Cir. 1994)).

47. Information supporting probable cause must also be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Franks v. Delaware, 438 U.S. 154, 165 (1978).

48. Statements that are knowingly false or exhibit a reckless disregard for the truth must not be used by the magistrate to determine probable cause. Id. at 171-72.

49. When evidence acquired from an illegal search is later used to obtain an otherwise valid search warrant, "[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." United States v. Reilly, 76 F.3d 1271, 1282 n. 2 (2d Cir.1996), quoting United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987).

50. According to the analysis outlined in United States v. Vasey, "once any reference to the [items] discovered in the warrantless search was excised from the affidavit, the remaining statements of fact in the affidavit would not establish probable cause to issue the warrant." Id.

51. In this instance, once the language describing the child pornography materials obtained from Mr. Sultanov's phone, via coerced statement, is removed from the text of the Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize, the affidavit would not establish probable cause.

52. Accordingly, all of the evidence seized during this search must be suppressed and good faith exception shall not "save" evidence seized due to reckless actions of Special Agent Croft.

Date: Brooklyn, New York
August 22, 2023

Respectfully submitted,

/s/ Igor Niman
Igor Niman, Esq.
Attorney at Law
1909 East 17th Street
Brooklyn, NY 11229
Phone: (718) 382-1689
Fax: (718) 228-6633
Email: igor_niman@yahoo.com