

U.S. Department of Justice

United States Attorney
Eastern District of New York

| | |
|---|---|
| DMP:NCG | *271 Cadman Plaza East* |
| F. #2022R00224 | *Brooklyn, New York 11201* |

January 11, 2024

<u>By ECF</u>

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Kurbonali Sultanov
     <u>Criminal Docket No. 22-149 (NRM)</u>

Dear Judge Morrison:

   The government respectfully submits this letter to supplement its opposition to the defendant's motion to suppress, ECF No. 22, and to alert the Court to a recent relevant case that was decided on border searches in this district, <u>United States v. Alexey Gavino</u>, No. 22-CR-136 (RPK), 2024 WL 85072 (E.D.N.Y. Jan. 7, 2024). The government respectfully submits that the Court should follow the reasoning set forth in this case and deny the defendant's motion in its entirety.

   In <u>Gavino</u>, the Court denied the defendant's motion to suppress evidence obtained from searches of his cell phone conducted at the border during a secondary inspection and statements he made to law enforcement officers. <u>Id.</u> at *1. There, the defendant was stopped by a U.S. Customs and Border Protection ("CBP") agent at John F. Kennedy International Airport ("JFK Airport") upon his return to the United States from the Dominican Republic. <u>Id.</u> A few hours earlier, the CBP officer had reviewed a lookout that had been placed on the defendant, which noted that on a prior trip in 2019, law enforcement seized $37,000 in cash from the defendant's person, and he never retrieved the cash afterwards. <u>Id.</u>

   The CBP officer identified himself to the defendant outside the primary inspection area at JFK Airport and informed the defendant he had been selected for a secondary inspection. <u>Id.</u> at *2. Once in the secondary inspection area, the CBP officer searched the defendant's bag and asked him questions about his trip to the Dominican Republic and about any past incidents where he had been arrested or had anything taken from him. <u>Id.</u> The CBP officer concluded that the defendant's responses to his questions

were reluctant and did not make sense. Id. Thereafter, he asked the defendant for his cell phone with the intention of searching for any evidence of narcotics trafficking activity. Id. The defendant handed his cell phone to the CBP officer in the powered on, locked position. Id. When the CBP officer asked the defendant to unlock the phone, the defendant responded, in sum and substance, "you're the government, you can unlock it yourself, no?" Id. The CBP officer replied that he could, but that he would need to send the defendant's phone to a lab, which could take several months. Id. In response, the defendant apologized and unlocked the phone and gave it back to the CBP officer. Id. The CBP officer also asked the defendant for the phone's passcode, which the defendant provided. Id. The CBP officer conducted a manual search of the cell phone in airplane mode and after around five minutes of searching the phone, the CBP officer discovered images of what he believed to be child pornography. Id. at *3. After discovering these images, the CBP officer contacted both his supervisor and Homeland Security Investigations ("HSI"). Id.

Shortly thereafter, a HSI officer arrived at the secondary inspection area and conducted a manual review of the defendant's cell phone, obtained a Miranda waiver from the defendant, and interviewed the defendant, who admitted he had received child pornography on his phone. Id. The HSI officer thereafter applied for and obtained a search warrant to conduct a forensic search of the cell phone, and the defendant was later indicted on three counts of transportation of child pornography and one count of possession of child pornography. Id.

The defendant filed a motion to suppress evidence, arguing that evidence from his cell phone should be suppressed because the CBP officer's initial search of his cell phone violated the Fourth Amendment, and evidence from the later forensic search of the phone and the statements he made to law enforcement were fruits of that initial search. Id. The defendant also argued that law enforcement violated his Fifth Amendment right against self-incrimination because the CBP officer should have provided Miranda warnings before requesting his cell phone passcode, and that the defendant provided the passcode involuntarily. Id.

The Court held, first, that the search of the defendant's cell phone did not violate the Fourth Amendment because under Second Circuit precedent, it was supported by reasonable suspicion. Id. The Court noted that border searches "are a long-recognized exception to the general rule requiring that searches be supported by probable cause and conducted with a warrant." Id. (citing United States v. Ramsey, 431 U.S. 606, 619 (1977)). The Court distinguished between routine searches at the border, which require no level of suspicion that criminal activity is afoot, and more invasive searches, such as strip searches, that require reasonable suspicion, and found that searches of cell phones fall within the category of searches requiring reasonable suspicion, relying on Riley v. California, 573 U.S. 373 (2014). Id. at *4.

The Court rejected the defendant's argument that Riley or any other case supported requiring more than reasonable suspicion for cell phone searches at the border. Id. at *5. The Court found that Riley did not consider whether warrantless searches of cell phones at the border advanced governmental interests and found that such searches

2

"transparently advance the public interest." Id.  Additionally, the Court observed that courts have deemed reasonable suspicion sufficient to justify body cavity and alimentary canal searches, and Riley did not suggest that cell phone searches intrude more greatly on privacy than those.  Id.

Similarly, the Court also rejected the reasoning set forth in United States v. Smith, No. 22-CR-352 (JSR) 2023 WL 3358357 (S.D.N.Y. 2023), noting that its reasoning was incompatible with the "relatively expansive approach to border searches articulated by the Second Circuit in [United States v.] Levy [803 F.3d 120, 122 (2d Cir. 2015)]." Id. at *6.  The Court concluded that reasonable suspicion justified a cell-phone border search and was present in this case.

Second, the Court held that the CBP officer was not required to provide the defendant with Miranda warnings during their encounter because the defendant was not in custody when he was questioned.  Id. at *7.  The Court noted that "courts have consistently held that secondary inspections at airports are not custodial even when they involve meaningful constraints on travelers' freedoms," id., and that "[c]onsidering the totality of the circumstances, the defendant was subjected to nothing more than the conditions typical of a modern border inspection."  Id. at *8 (internal citation omitted).

Finally, the Court held that no violation of the Fifth Amendment occurred because the defendant provided his passcode voluntarily.  Id. at *9.  There was testimony at the hearing that the questioning occurred during a secondary inspection, the interactions were calm and cordial, the defendant appeared to understand the questions, and the CBP officer did not engage in any coercive conduct.  Id.  Indeed, even though the CBP officer noted that the defendant may not have his cell phone for several months if it was sent to a lab, the Court found that such a statement was not a threat.  Id.  Under these circumstances, the defendant provided his passcode voluntarily.  Id.

The same reasoning should apply here.  If the Court finds that the manual search of the defendant's device in this case was nonroutine, the Court should find that the manual search was justified by reasonable suspicion, which the defendant has conceded was present in this case.  See Oral Arg. Tr. at 45-46.  Additionally, the Court should find that the CBP officer was not required to provide Miranda warnings to the defendant in secondary inspection, because he was not in custody at the time, and that no violation of the defendant's Fifth Amendment rights occurred because he provided the passcode to his cell phone voluntarily.

For the reasons stated in the government's opposition to the defendant's motion to suppress, ECF No. 22, and the government's supplemental letters, the defendant's motion to suppress should be denied in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/_____
Nina C. Gupta
Assistant U.S. Attorney
(718) 254-6257