**Igor Niman, Esq.**
**Attorney at Law**
**1909 East 17th Street**
**Brooklyn, NY 11229**
**Phone: (917) 254-1297**
**Fax: (718) 228-6633**

September 17, 2025

<u>By ECF</u>

The Honorable Nina R. Morrison
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re: **United States v. Kurbonali Sultanov**
          **Criminal Docket No. 22-149 (NRM)**

Dear Judge Morrison:

**SENTENCING MEMORANDUM OF DEFENDANT KURBONALI SULTANOV**

**INTRODUCTION**

This Memorandum is hereby respectfully submitted in aid of this Honorable Court's Sentencing of Defendant Kurbonali Sultanov, currently scheduled for October 3, 2025. To date, Mr. Sultanov has pled guilty to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

The Defendant is a father of one minor child, who is experiencing severe health, mental and developmental issues. He is the sole income provider for the child who requires extensive medical attention. Thus, based on these circumstances, the defense seeks a sentence of probation for Mr. Sultanov.

  **I.**  **THE HISTORY AND THE CHARACTERISTICS OF THE OFFENDER**

Mr. Sultanov was born on May 28, 1993. He had immigrated into the United States in 2012. Once he obtained basic command of English language, he obtained lawfull employment and has continued working despite his arrest and house confinement.

According to his statement, Kurbonali Sultanov became obsessed with adult pornography years ago. At some point, he was downloading thousands of adult pornography files per week. The obsession with adult pornography essentially consumed his free time.

Unfortunately, his obsession with adult pornography had subsequently escalated into an act of possession of child pornography, which led to the instant arrest and prosecution.

## II.  DEFENDANT'S MENTAL HEALTH TREATMENT

After the arrest, Mr. Sultanov was referred by pretrial services to The New York Mental Health Group to complete a psychosexual evaluation. As a result of the evaluation, Mr. Sultanov was diagnosed with adjustment disorder with anxiety, major depression, and an unspecified personality disorder (melancholic) type with borderline and dependent personality styles. (See, PSR Report).

Thereafter, he got engaged in regular therapy sessions through The New York Mental Health Group which he continues to attend at this time. Per treatment reports that were provided to pretrial services, Mr. Sultanov s remains engaging, forthcoming, motivated, open to feedback in the course of his treatment.

According to Mr. Sultanov's own statement, he feels significantly better, being able to understand the causes of his addiction. As a result, he doesn't have cravings to obtain or watch adult pornography.

## III.  THE COURT SHOULD NOT INCREASE BASE OFFENSE LEVEL BY 5 LEVEL ENHANCEMENT BASED ON NUMBER OF VIDEOS RECOVERED IN MR. SULTANOV'S PHONE

"The Sentencing Reform Act, of which § 3553 (a) is part, dictates that a defendant should be sentenced in accordance with its provisions to achieve the purposes of § 3553 (a)(2) "[e]xcept as otherwise specifically provided." 18 U.S.C. § 3551(a) (2006)." United States v. Coleman, 473 Fed.Appx. 223 (4th Cir. 2012).

Such sentence shall be "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 USCA § 3553(a).

It is important to remember that the Second Circuit, in United States. v. Dorvee, 616 F.3d 184-186 (2d Cir. 2010), had stated that "that § 2G2.2 is "fundamentally different" from other Guidelines and, unless it is "applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires."

In this instance, the Pretrial Report seeks imposition of additional five levels pursuant to USSG §2G2.2(b)(7)(D), which if imposed, will result in significant increase of incarceration time for the Mr. Sultonov. The Pretrial Report states: "The instant offense involved over 600 images. Specifically, the instant offense included 80 videos and 33 images. Per Application Note 6(B)(ii), one video is considered to have 75 images. Therefore, the instant offense involved the equivalent of 6,033 images. As such, an increase of five levels is warranted pursuant to USSG §2G2.2(b)(7)(D)."

The application of 1 to 75 ration, results in the possession of 6,033 images, which adds years of imprisonment to Mr. Sultanov. This situation perfectly fits the state of events highlighted by the Second Circuit in Dorvee, where the Court held that ""straightforward application" of § 2G2.2 " 'can lead to unreasonable sentences' " for the least culpable subset of eligible defendants—*i.e.*, first-time offenders who were "not involved in production of child pornography and had no contact with children." United States v. Lawrence, 139 F.4th 115 quoting United States v. Muzio, 966 F.3d 61, 65 (2d Cir. 2020) (quoting United States v, Dorvee, 616 F.3d at 184).

At the outset, the Defendant is not in possession of how many "videos" containing child pornography were discovered in his cell phones. For example, in the plea offer provided by the United States Assistant District Attorney Nina Gupta, the level of enhancement was 2 based on the understanding that "The offense involved at least 10 images, but fewer than 150 (U.S.S.G. § 2G2.2(b)(4)."

The question as to how many videos were uncovered in Mr. Sultanov's phones is a question of fact.

However, recent case law development demonstrates that some courts refused to treat Sentencing Commission's guidelines verbatim and in fact found "that the text of the Guideline enhancement, U.S.S.G. § 2G2.2(b)(7), is not genuinely ambiguous and, therefore, that there is no reason to rely on the Commentary." United States v. Roberts, 2025 WL 1699184 at 1 (E.D. Va. June 16, 2025)."

In addition, the Court in Roberts had held that " that the 75:1 ratio in the Commentary to U.S.S.G. § 2G2.2(b)(7) is an unreasonable interpretation of the image enhancement that is not due judicial deference pursuant to Kisor v. Wilkie, 588 U.S. 558, 139 S. Ct. 2400, 204 L.Ed.2d 841 (2019) and United States v. Boler, 115 F.4th 316 (4th Cir. 2024)." Id. at 26.

After a very careful examination of the text of the statute and the legislative intent the Court concluded that "The text of the statute confirms that one "image," as used in the image enhancement, unambiguously means one picture, one photograph, or the entirety of one video." Id. at 10.

Furthermore, the Court noted that "Nowhere in the text of the statute nor in the text of the image enhancement did Congress or the Commission provide any evidence of an intention to differentiate between a picture or photograph and a video for the purposes of criminalizing the possession of one "image" of child pornography." Id. at 11.

The Court argued that "It could have defined these terms differently when crafting the statute and when crafting the image table itself. It could have said that one "image" means one picture of child pornography and that each separate scene or frame or 30 seconds of video, for example, in a video equals one image of child pornography. But it did not do so. It equated, by equally listing them, one picture or one photograph with one video." Id.

In short, the Court in United States v. Roberts, calculated the level of enhancement by assigning a value of one to both images and videos.

On the other hand, the United States, Court of Appeals, Third Circuit, in United States v. Maguire, 436 Fed. Appx. 74, 78 (3rd Cir. 2011), mentioned that the District Court "declined to apply the two-level enhancement for use of a computer under § 2G2.2(b)(6) or the five-level enhancement for the number of images discovered on his computer under § 2G2.2(b)(7)(D)."

As to the five-level enhancement, the District Court stated: "the number of images doesn't reflect intent any longer, because the click of the mouse can result in many more images than anybody ever really perhaps wanted. Although he has them. But I don't view that as making the crime worse in this case, the number of images." Id.

Using the same logic in the instant case, the Defendant submits that he should either subject Mr. Sultanov to two level enhancement by adding 80, for the videos and 33 for the photos, equating to 113, which should place him in a range between "at least 10 images, but fewer than 150." U.S.S.G. § 2G2.2(b)(7) (A), which shall result in 2 level enhancement or decline to apply any level of enhancement.

### IV. THE COURT SHOULD NOT INCREASE MR. SULTANOV'S TOTAL OFFENSE LEVEL BY 2 POINTS DUE TO USE OF COMPUTER

The Pre Sentencing Report, recommends two level increase due to "the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material."

The issue of outdatedness of 2 level enhancement due to the use of the computers had been widely recognized by the courts and scholars, as well as Sentencing Commission itself, for the past decade.

According to Brent E. Newton, A Partial Fix of a Broken Guideline: A Proposed Amendment to Section 2G2.2 of the United States Sentencing Guidelines, 70 Case W. Rsrv. L. Rev. 53, 59-60 (2019)

> The Sentencing Commission's 2012 report to Congress sets forth the many problems with section 2G2.2. They can be summarized as follows: • Most of the enhancements in section 2G2.2 (e.g., "use of a computer," the number-of-images enhancements) were promulgated during an earlier era of computer and internet technologies when the enhancements were intended to apply only in atypical or aggravated cases. But as a result of today's computer and internet technologies, including peer-to-peer ("P2P") file-sharing, the vast majority of those antiquated enhancement provisions now apply to typical defendants.

The Third Circuit, Court of Appeals, in <u>United States v. Maguire</u>, 436 Fed. Appx. 74, 78 (3rd Cir. 2011), restated the words of the lower court stating, "With regard to § 2G2.2(b)(6), the District Court stated that "these crimes always involve a computer, and therefore it is almost de facto, not de jure, but de facto become - that the use of the computer is synonymous with the crime."

Additionally, in <u>United States. v. Husmann</u>, 765 F.3d 169, 172 (3rd Cir. 2014), the Court had "declined to apply a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for the use of a computer, since virtually all child pornography offenders use computers."

However, the Second Circuit Court in <u>United States v. Dorvee</u>, 616 F.3d at 186-187, had explained:

> The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases. The base offense level for distribution of child pornography, which in 1991 was 13, has been gradually increased to 22 as the Commission has attempted to square the Guidelines with Congress's various directives. On top of that, many of the § 2G2.2 enhancements apply in nearly all cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or more images (qualifying for a five-level enhancement pursuant to § 2G2.2(b)(7)(D)). In sum, these enhancements, which apply to the vast majority of defendants sentenced under § 2G2.2, add up to 13 levels, resulting in a typical total offense level of 35.

Thus, as the Court stated in <u>United States v. D.M.</u>, 942 F.Supp.2d 327, 352 (E.D.N.Y. 2013) "Rationales for child pornography Guidelines for non-production offenses have been shredded."

Considering that Mr. Sultanov is a typical defendant who had obtained child pornography but did not share it or distribute it in any way, such possession most naturally happened via a use of a cell phone which is the most common device employed for human communications in our days. The initial purpose of punishing offenders who had used computer as some sort of sophisticated means of obtain child pornography is gone as humans obtain most of their information or material possessions via their cell phones.

Thus, the Defense is objecting to imposition of 2 points enhancement for the use of the computer or an interactive computer service for the possession of child pornography.

## V. EXTRAORDINARY HARDSHIP

"The Second Circuit has affirmed downward departures where a Guidelines sentence would impose extraordinary hardship on a defendant's family, and particularly in cases where defendants are "solely responsible for the upbringing of ... children." U.S. v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992); see also, e.g., U.S. v. Galante, 111 F.3d 1029 (2nd Cir. 1997); U.S. v. Alba, 933 F.2d 1117 (2d Cir. 1991) (affirming downward departure where defendant's imprisonment would harm adult relatives needing special care and might result in destruction of family unit)." U.S. v. Adams, 2017 WL 2615440 at 4 (E.D.N.Y. 2017).

The courts had found extraordinary hardship in cases, where the Seventh Circuit approved a departure in the case of a father of three who, "while very important to his children financially and emotionally, had a spouse who could care for the children during his incarceration." U.S. v. Norton, 218 F.Supp.2d 1014, 1021 (E.D. Wis. 2002), citing U.S. v. Owens, 145 F.3d 923, 926, 929 (7th Cir. 1998), and U.S. v. Alba, 933 F.2d 1117, 1122 (2nd Dept. 1991) (granting downward departure for married father of two who lived with and cared for his disabled father).

In this case, it is undisputed that Mr. Sultanov's two-and-a-half-year-old son, Islombek Sultanov, is severely ill. He requires hospital treatment every three month. Mr. Sultanov is the only person who provides financial support that is necessary to treat the child.

Therefore, the Defendant is respectfully asking this Court to impose probationary sentence.

Respectfully submitted,

*Igor Niman*

_____
IGOR NIMAN, Esq.