February 20, 2026

Officer Nicole Gervase
United States Probation Officer
Brooklyn, NY 11201

Re: *United States v. Kurbonali Sultanov*, 22 CR 149

Dear Officer Gervase,

I am writing to respectfully submit the below corrections and objections to some of the conditions of supervised release proposed by the probation department.

Mr. Sultanov's current financial situation

The report of Mr. Sultanov's monthly expenses omits his grocery and other food expenses, which are ~$1000 monthly, and the money that he sends abroad to his family. Specifically, he sends about $1,200 every three months for his son's quarterly medical treatments. He also sends at least $1000-2000 to his parents every month. He also sends additional substantial money to his family as needed, including paying for his father's recent medical expenses related to his ICU hospital stay, his sister's child's recent medical expenses, his brother's wedding, and for cars for his family. He financially supports not only his son and parents, but his entire family in Uzbekistan. Taking these expenses into account, he doesn't have a positive monthly cash flow. Instead, these expenses help explain why he has credit card debt. PSR 13.

Proposed condition requiring polygraph or visual response testing as "part of [a] treatment program," in paragraph 93:

I respectfully object to a condition of supervised release imposing mandated polygraph examinations and/or visual response testing. This type of testing is inconsistent with Mr. Sultanov's demonstrated engagement with treatment. PSR 11.

In a case in this district, Dr. Sasha Bardey, M.D. explained to the court that

"a blunt tool like the polygraph, with all its associated anxiety, would add further resistance to treatment, encourage non-disclosure and negatively impact on the therapeutic alliance essential for successful and meaningful treatment." *See United States v. Llanga Moran*, 14-cr-349 (KAM), Dkt. 55, at p. 2. Although much of that case's record is sealed, the district court declined to order polygraph testing. 14-cr-349 (KAM), Dkt. 61. *See also United States v. Jonathan Deutsch*, 18-cr-502 (FB) (declining to impose polygraph or visual response testing); *United States v. Pepio*, ECF 20-cr-562; Sentencing Transcript at 55 (E.D.N.Y. Aug. 10, 2023) (same).

Moreover, the cases where the Second Circuit has allowed polygraph testing involved aggravated facts not present here, for example when the person had been resistant to treatment, there was an indication that they were not complying with the conditions of supervised release, or otherwise involved aggravating factors well beyond what is present here. *See United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) ("The district court crafted supervised release conditions for a serial offender who apparently resisted honest self-assessment. Johnson's treatment provider labeled Johnson's attitude 'superficial and not adequately engaged in the recovery process. He has an increasingly antagonistic attitude . . . [featuring an] inadequate level of accountability for his offenses.'"); *Gjurovich v. United States*, No. 01-CR-215, 2009 WL 3232139, at *2 (N.D.N.Y. Oct. 1, 2009) (imposing Computerized Voice Stress Analysis, a "truth verification" tool similar to the polygraph, the court pointed to defendant's difficulty complying with the terms of supervision, tampering with computer monitoring software, communications with another sex offender, use of cocaine while on supervision, and possession of sexually stimulating images in a magazine). *See also United States v. McLaurin*, 731 F.3d 258, 263 (2d Cir. 2013) (finding in a case about the imposition of penile plethysmography as a condition of supervised release that "even if the machine could accurately monitor and record the extent or intensity of a convict's prurient interests (a proposition about which we have serious doubts), the goal of correctional treatment during supervised release is properly directed at conduct, not at daydreaming"). None of these factors are present in this case.

<u>Proposed condition in paragraph 89</u>: I respectfully request that this proposed condition be amended to add the word "knowingly" so that it prohibits Mr. Sultanov from "knowingly" associating with the types of people listed.

Additionally, Mr. Sultanov requests that he be permitted to use voice and video calls to speak to his son, his niece, and his nephew, all of whom are in Uzbekistan. Under his current bond conditions, he is allowed only to speak to his son.

<u>Proposed condition banning adult pornography, paragraph 92</u>:  I respectfully object to Mr. Sultanov being prohibited from possessing legal adult pornography, which is protected by the First Amendment. *United States v. Eaglin*, 913 F.3d 88, 99 (2d Cir. 2018) (holding that a ban of adult pornography was unreasonable). *See also Pepio*, ECF 20-cr-562; Sentencing Transcript at 68 (declining to ban adult pornography); *United States v. Robinson*, No. 22-835, 2023 WL 4004690 (2d Cir. June 15, 2023) (vacating condition banning adult pornography); *United States v. McQueen*, 2023 WL 4009742 (2d Cir. 2023) (same); *United States v. Leonard*, 2023 WL 2977523 (2d Cir. 2023) (same); *United States v. Denno*, 831 F. App'x 564, 567 (2d Cir. 2020) (same); *United States v. Brown*, 653 F. App'x 50, 52 (2d Cir. 2016) (same).

A court may only restrict the ability of a person on supervised release to view legal pornography if "reasonably related to the enumerated statutory" purposes of supervised release, "no greater deprivation of liberty than reasonably necessary," and related to "individualized assessment" and a "realistic danger." *Eaglin*, 913 F.3d at 100. Nothing in Mr. Sultanov's history or the record establish that he needs to be barred from viewing adult pornography.

<u>Proposed condition for broad electronic monitoring, including GPS monitoring, without reasonable suspicion requirement, paragraph 92:</u>

The Second Circuit has "repeatedly cautioned against computer monitoring conditions that impose unnecessarily severe restrictions on releasees' liberty," and held that "[m]onitoring conditions must be narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into [their] net." *United States v. Salazar*, No. 22-1385-CR, 2023 WL 4363247, at *3 (2d Cir. July 6, 2023) (internal citations and quotations omitted). The Court has "frequently described and have generally upheld monitoring conditions authorizing Probation to search releasees' devices <u>only when an electronic program detects suspicious activity</u>." *United States v. Salazar*, No. 22-1385-CR, 2023 WL 4363247, at *3 (2d Cir. July 6, 2023) (emphasis added).

While I appreciate that probation has modified the language of this condition apparently in reaction to *Salazar*, the condition, as written, still allows Probation to "capture and analyze all data processed by and/or contained on the device including the geolocation of the device" and to "review[ ] the monitored data" without any limitation based on reasonable suspicion. To fix this problem, those phrases should be removed from the condition. Instead, the condition should be clearly limited to allowing a search of the data and the devices only if probation

has reasonable suspicion that Mr. Sultanov has violated the conditions of his supervised release through his use of the devices.

As drafted, the condition is also quite confusing. The phrases that attempt to limit the monitoring to situations where there is reasonable suspicion are undercut by other phrases that make clear that probation can monitor everything even without reasonable suspicion. The condition states: "The monitoring software/hardware is authorized to capture and analyze all data processed by and/or contained on the device, including the geolocation of the device." Reading this phrase in isolation, it suggests that only the "software" will be "analyz[ing] the data" in the first instance and that probation would only look at or analyze it if there was reasonable suspicion. However, subsequent language makes clear that probation will analyze the data without suspicion: "**In addition to reviewing the monitored data**, the Probation Office may access the device(s) if reasonable suspicion exists." (emphasis added). Thus, as written, the "reasonable suspicion" limit only applies to <u>physically</u> accessing the devices, not analyzing all the data on the devices. It should apply to both types of monitoring.

Thus, as written, the proposed condition will draw a wide swath of extraneous material into its net. The condition still allows a probation officer, for example, to comb through every piece of information on Mr. Sultanov's cellphone; to view his web searches for medical information and political candidates; to listen to any voice messages he receives on his cellphone; and to read his texts, chats, or emails with his family, friends, lawyers, or medical providers – all <u>without</u> any suspicion of wrong-doing. This is exactly what the Second Circuit in *Salazar* found problematic.

As drafted, the same is true with respect to geolocation data. As a preliminary matter, there is no nexus between Mr. Sultanov's conviction and a need to collect the location of his electronic devices. As in *Salazar*, there his offense was committed on his device. *Salazar*, 2023 WL 4363247, at *3. The proposed condition is also overbroad as it currently gives probation the ability to track Mr. Sultanov's physical location and movements throughout his supervised release term by accessing all of the geolocation information on any electronic device he uses. In the alternative to striking this portion of the condition, at the least, probation should not be permitted to geolocate his devices at all times, by striking the phrase, "capture and analyze all data processed by and/or contained on the device including the geolocation of the device." As written, that sentence undercuts the next one, which attempts to limit access to location data to situations where there is reasonable suspicion.

Finally, the search condition in proposed condition in paragraph 88 has the appropriate language related to reasonable suspicion, stating that the search can only be conducted when "reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner." This same language should be used in the proposed condition in paragraph 92. As written, proposed condition in paragraph 92 omits the language noting that the suspicion must be that "the areas to be searched contain evidence of [the] violation." It also, oddly, adds a phrase allowing a search if there is "reasonable suspicion" that a "violation of a condition of supervision" "is about to occur." Thus, under the present terms, a search of all of Mr. Sultanov's electronic devices could occur if there was, for example, reasonably suspicion that he was *about to* go to New Jersey (outside of the district of EDNY) without permission. This is not reasonably connected to Mr. Sultanov or the goals of supervised release.

<u>Proposed condition requiring that Mr. Sultanov provide passwords for all of his accounts, paragraph 97</u>: The proposed condition to provide passwords for all email accounts, social media accounts, and cloud storage accounts appears duplicative of proposed condition allowing all data on his electronic devices to be captured. There is also no grounds for probation to have the passwords for email accounts, which are not generally connected to anything to do with child pornography, but are generally used for private written communications, for example, to family and lawyers.

<u>Proposed condition requiring financial records, paragraph 93</u>: There is no connection between Mr. Sultanov's offense and any requirement that he provide a "full disclosure" of financial records, be subjected to any "investigation of [his] financial dealings," or be "prohibited from maintaining" "opening" any accounts without the approval of probation. This should be removed.

<u>Condition regarding travel</u>: Mr. Sultanov worked as a long-distance truck driver before his arrest. He would like to resume this work after his sentencing. To allow him to work, we respectfully request that he be permitted to travel throughout the continental United States.

                                          Respectfully submitted,

                                          /s/_____

Igor Niman, Esq.
Attorney for the Defendant
1909 East 17th Street
Brooklyn, NY 11229
Phone: (917) 254-1297
Email: igor_niman@yahoo.com